## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| ELAINE R. SMITH, Guardian for THOMAS K. IRWIN, a Protected Person | ) ) ) | CASE NO. 3:23-cv-00365 |
| | ) | JUDGE |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| MIAMI VALLEY HOSPITAL<br>c/o Cara W. Powers, Registered Agent<br>110 N. Main Street, Suite 900<br>Dayton, OH 45402 | ) ) ) ) ) | **PLAINTIFF'S COMPLAINT**<br><br>***[Jury Demand Endorsed Hereon]*** |
| and | ) ) | |
| PREMIER HEALTH PARTNERS<br>c/o Cara W. Powers, Registered Agent<br>110 N. Main Street, Suite 900<br>Dayton, OH 45402 | ) ) ) ) ) | |
| and | ) ) | |
| MIAMI VALLEY EMERGENCY SPECIALISTS, LLC<br>c/o Acme Agent, Inc., Statutory Agent<br>401 S. High St., Ste. 2800<br>Columbus, OH 43215 | ) ) ) ) ) ) | |
| and | ) ) | |
| TRENT DAVIS<br>*(Personal Residential Address Withheld)*<br>c/o John F. Haviland, Esq.<br>Bieser, Greer & Landis, LLP<br>6 North Main Street, Suite 400<br>Dayton, OH 45402 | ) ) ) ) ) ) ) | |
| and | ) ) | |
| STEVEN F. CHAPMAN, DO<br>One Wyoming Street<br>Dayton, OH 45409 | ) ) ) | |

| | |
|---|---|
| and | ) |
| | ) |
| TITUS CHU, MD | ) |
| One Wyoming Street | ) |
| Dayton, OH 45409 | ) |
| | ) |
| and | ) |
| | ) |
| TREVOR BICKFORD, MD | ) |
| One Wyoming Street | ) |
| Dayton, OH 45409 | ) |
| | ) |
| and | ) |
| | ) |
| JOSEPH W. INHOFER, MD | ) |
| One Wyoming Street | ) |
| Dayton, OH 45409 | ) |
| | ) |
| and | ) |
| | ) |
| MEGAN M. SNYDER, RN | ) |
| One Wyoming Street | ) |
| Dayton, OH 45409 | ) |
| | ) |
|            Defendants. | ) |
| | ) |

NOW COMES Plaintiff, Elaine Smith, as Guardian for THOMAS K. IRWIN, a Protected Person, by and through undersigned counsel, and for her Complaint against the above-named Defendants, states and avers as follows:

## **INTRODUCTION**

1.  This action arises from an incident that occurred on December 7, 2022, during which Defendant Trent Davis, a police officer and/or security guard employed by Defendant Miami Valley Hospital ("MVH") and/or Premier Health Partners ("PHP"), suddenly, excessively, aggressively, violently, and unreasonably assaulted and battered Thomas Irwin, causing Mr. Irwin to suffer multiple head, facial, and orbital fractures, brain bleeds, and permanent brain injury,

2

rendering Mr. Irwin dependent and unable to perform his activities of daily living, for which he now requires 24-hour care and supervision for the remainder of his life.

2. Plaintiff asserts claims under 42 U.S.C. § 1983 for violations of Thomas Irwin's rights to be free from unreasonable seizures and excessive force under the protections of the Fourth and/or Fourteenth Amendments to the United States Constitution. Plaintiff also asserts Ohio state law claims for assault and battery, negligence, intentional infliction of emotional distress, and negligent hiring/retention/supervision against Defendants MVH, PHP, and Defendant Davis. At all times relevant, Defendant Davis was acting within the course and scope of his employment with Defendants MVH and/or PHP, rendering said Defendants vicariously liable for Defendant Davis' conduct alleged herein in connection with the state law claims asserted against him. Finally, Plaintiff asserts medical negligence claims against certain Defendant medical care providers employed by Defendants MVH, PHP and/or Defendant Miami Valley Emergency Specialists, LLC ("MVES").

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as certain claims asserted herein arise under the Constitution and laws of the United States, to wit, the Fourth and/or Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

4. Pendant jurisdiction over the state law claims asserted herein is invoked pursuant to 28 U.S.C. § 1367.

5. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2).

## PARTIES

6. At all times relevant, Plaintiff Elaine Smith is and was Thomas Irwin's mother

residing in Ohio. Plaintiff Elaine Smith is the duly appointed Guardian of Thomas Irwin, Stark County Probate Court Case No. 244967.

7. At all times relevant, Thomas Irwin was a citizen of the United States residing in the State of Ohio and was and is entitled to the protections of the Constitution and laws of the United States of America and the State of Ohio.

8. At all times relevant, Defendant MVH was and is an Ohio corporation with its principal place of business located in the Southern District of Ohio in Dayton, Ohio.

9. At all times relevant, Defendant PHP was and is an Ohio corporation with its principal place of business located in the Southern District of Ohio in Dayton, Ohio.

10. At all times relevant, Defendant MVES was and is an Ohio corporation with its principal place of business located in the Southern District of Ohio in Dayton, Ohio. Upon information and belief, Defendant MVES employs physicians and other medical care providers who provide medical care to patients at the MVH emergency department.

11. At all times relevant, Defendant Trent Davis ("Davis") was and is a MVH campus safety department police officer and/or security guard residing in the Southern District of Ohio, employed by Defendant MVH and/or Defendant PHP, who was acting under color of law and within the course and scope of his employment and/or agency or with Defendants MVH and/or PHP.

12. At all times relevant, Defendant Steven F. Chapman, DO ("Chapman") was and is a licensed physician residing in the Southern District of Ohio, specializing in emergency medicine, who was working as an emergency room attending physician within the course and scope of his employment and/or agency with Defendants MVH, PHP and/or MVES. Defendants MVH, PHP and/or MVES are vicariously liable for the conduct of Defendant Chapman, as alleged herein,

4

pursuant to the doctrine of *respondent superior*.

13. At all times relevant, Defendant Titus Chu, MD ("Chu") was and is a licensed physician residing in the Southern District of Ohio, specializing in emergency medicine, who was working as an emergency room attending physician within the course and scope of his employment and/or agency with Defendants MVH, PHP and/or MVES. Defendants MVH, PHP and/or MVES are vicariously liable for the conduct of Defendant Chu, as alleged herein, pursuant to the doctrine of *respondent superior*.

14. At all times relevant, Defendant Trevor Bickford, MD ("Bickford") was and is a licensed physician residing in the Southern District of Ohio, specializing in emergency medicine, who was working as an emergency room resident physician within the course and scope of his employment and/or agency with Defendants MVH, PHP and/or MVES. Defendants MVH, PHP and/or MVES are vicariously liable for the conduct of Defendant Bickford, as alleged herein, pursuant to the doctrine of *respondent superior*.

15. At all times relevant, Defendant Joseph W. Inhofer, MD ("Inhofer") was and is a licensed physician residing in the Southern District of Ohio, specializing in emergency medicine, who was working as an emergency room resident physician within the course and scope of his employment and/or agency with Defendants MVH, PHP and/or MVES. Defendants MVH, PHP and/or MVES are vicariously liable for the conduct of Defendant Inhofer, as alleged herein, pursuant to the doctrine of *respondent superior*.

16. At all times relevant, Defendant Megan M. Snyder, RN ("Snyder") was and is a licensed registered nurse residing in the Southern District of Ohio, who was working as an emergency room nurse within the course and scope of her employment and/or agency with Defendants MVH, PHP and/or MVES. Defendants MVH, PHP and/or MVES are vicariously liable

for the conduct of Defendant Snyder, as alleged herein, pursuant to the doctrine of *respondent superior*.

17. At all times relevant, Defendant Davis is and was a "person" under 42 U.S.C. § 1983 and is being sued herein in his individual capacity.

18. At all times relevant, Defendants MVH and/or PHP owned, operated, staffed, and supervised the Miami Valley Hospital facility located in Dayton, Ohio, and were responsible for the administration, operation, training, and supervision of the security officer and law enforcement personnel working in said facility, and were further responsible for the promulgation, enforcement and review of rules, regulations, policies, customs, and practices therein.

## STATEMENT OF FACTS

19. Thomas Irwin ("Irwin") was thirty-one years old at the time of the incidents described herein, who had a mental health diagnosis of major depressive disorder which was known to Defendants MVH, PHP and/or MVES.

20. On December 7, 2022, at approximately 5:03 am, University of Dayton campus police observed Irwin at a bus stop, lying on the sidewalk and sleeping.

21. After a brief interaction with him, Dayton University campus police observed Irwin staggering while getting up and having slurred speech. Dayton University campus police suspected Irwin was under the influence of drugs or alcohol, at which time they patted Irwin down for weapons. No weapons were found.

22. At approximately 5:30 am, Irwin was transported from the University of Dayton campus to the MVH Emergency Room ("ER") for assessment and treatment of suspected drug / alcohol intoxication.

23. Irwin arrived at the MVH ER at approximately 5:40 am, at which time he came

under the care of emergency medicine attending physician Kelli Thomas, MD, and emergency medicine resident Jacob Patz, MD.

24. Upon presentation, Irwin was noted to have altered mental status, was unable to answer questions, and appeared to be intoxicated and/or under the influence of drugs. Irwin was was taken to a mental health observation room, specifically observation room 73.

25. Mr. Irwin was evaluated by resident Dr. Patz at 5:53 am, who observed that the patient was alternating between lying completely flat in bed in a near catatonic state and briefly sitting up, sporadically, while moaning and yelling.

26. Dr. Patz noted that though Mr. Irwin responded to his name and briefly made eye contact, he was not providing any meaningful verbal responses besides yelling and moaning.

27. Dr. Patz was unable to carry out a review of systems because of Mr. Irwin's altered mental status. Dr. Patz was able to perform a partial physical exam, the neurological portion of which demonstrated that Irwin was able to move all extremities spontaneously without apparent deficits, though Mr. Irwin was unable to follow exam questions when prompted.

28. The plan for Mr. Irwin, as documented by Dr. Patz and Dr. Thomas, was for continued observation in the ER to assess for return to cognitive baseline.

29. At 6:06 am, medical staff were unable to obtain an EKG because Mr. Irwin was agitated.

30. At 6:10 am, Mr. Irwin was given 2 mg of Ativan for agitation and startle-like responses.

31. Mr. Irwin was taken for a CT scan at 6:40 am and was returned to his room at 6:48 am.  Imaging of the head / brain revealed no evidence of trauma or other abnormalities of the brain or skull.

32. At approximately 7:00 am, Mr. Irwin's care was taken over by the oncoming shift, specifically by emergency medicine attending physician Defendant Chapman, and the emergency medicine resident Defendant Bickford.

33. Throughout that morning and afternoon, Mr. Irwin was seen several times by Defendants Chapman and Bickford.

34. At 2:47 pm, Defendant Chapman noted that he checked on Irwin twice and that Irwin continued to sleep. Defendant Chapman also noted that a urine drug screen had not yet been obtained.

35. At 3:18 pm, Defendant Bickford noted that he observed and re-evaluated Mr. Irwin multiple times throughout the day, and that Mr. Irwin "continued to not make comprehensible noises."

36. Upon information and belief, a shift change took place between 3:20 pm and 3:45 pm, at which time emergency medicine attending physician Defendant Chu and emergency medicine resident Defendant Inhofer were to take over for Defendants Chapman and Bickford.

37. At 3:35 pm, Defendant Nurse Snyder noted that Mr. Irwin was now awake and asking for food. Defendant Snyder told Irwin there was no food available. It was at this time that the hospital's campus police officers and/or security guards escorted Mr. Irwin out of the ER, after being given socks and personal belongings.

38. When Mr. Irwin was escorted out of the ER, Defendant Bickford noted that Mr. Irwin's treatment had not yet been completed.

39. Mr. Irwin's medical records reflect that at the time Mr. Irwin was escorted out of the ER, he had not received necessary medical assessment, treatment and evaluation.

40. Irwin was in the emergency department lobby area at 3:34 pm, surrounded by

several campus safety department police officers and/or security guards, including Defendant Davis, who instructed Mr. Irwin to leave the hospital.

41. Not having returned to his cognitive baseline and with his medical care incomplete, Mr. Irwin expressed to the officers and/or security guards that he did not want to leave and was still in need of medical observation and care. Upon information and belief, Irwin also advised the officers he needed to use the restroom and requested to use one.

42. Defendant MVH's / PHP's officers and/or security guards, including Defendant Davis, disregarded Irwin's requests for continued medical care and observation, refused to let him use the restroom, and physically forced Irwin out the front door of the hospital.

43. Mr. Irwin was forced outside into the cold, wearing shorts with no jacket, and he had no shoes on. Upon information and belief, Mr. Irwin walked / staggered to the side of the hospital building to urinate and relieve himself, having been denied use of the hospital's restroom.

44. A moment later, Mr. Irwin started walking away from the hospital in a peaceful manner. As revealed in Defendants MVH/PHP's hospital surveillance video, Mr. Irwin started walking through the parking lot in a pedestrian crosswalk, away from the hospital and toward the nearest public road.

45. At this time, Defendant Davis was working as a hospital campus police officer and/or security guard, and was performing his duties on behalf of, in furtherance of, at the behest of, and subject to the direction and right of control of Defendants MVH and/or PHP.

46. After being physically removed, and while walking away from the hospital premises, Mr. Irwin never threatened anyone and never presented a risk of harm to anyone.

47. While outside of the hospital and while Mr. Irwin was peacefully walking away through a pedestrian crosswalk in the parking lot, Defendant Davis, acting under color of law while

9

wearing his MVH campus police officer uniform, suddenly, without provocation, cause, and need therefore, ran toward Plaintiff, grabbed Irwin in bear hug from behind, and tackled him face first into the ground, causing Irwin's head and face to strike against the concrete ground.

48. A moment after Defendant Davis slammed Irwin's head and face into the concrete (approximately 3:50 pm) the unresponsive and motionless Irwin started bleeding profusely from his ears and nose. Mr. Irwin also had an abrasion on his forehead and was bleeding from several sites on his face and head.

49. Irwin was readmitted to MVH ER, where he was found to have a serious head injury as evidenced by a large, 4 cm head laceration, blood in the bilateral nares and left ear, intraocular pressure behind the right eye with proptosis, and a Glasgow Coma Scale of less than 6.

50. Workup revealed that Mr. Irwin had multiple intracranial hemorrhages (brain bleeds), multiple comminuted and displaced calvarial and facial bone fractures, and traumatic brain injury (TBI) caused by blunt force trauma and hypoxia (confirmed by MRI showing diffuse axonal injury and by continuous EEG which showed slowing).

51. Mr. Irwin underwent right lateral canthotomy to relieve the intraocular pressure behind his right eye, was intubated, and was ventilatory dependent for a prolonged period of time. Mr. Irwin was admitted to the Surgical ICU for further management.

52. On December 20, 2022, Mr. Irwin underwent tracheostomy placement, bronchoscopy, and PEG tube placement.

53. Mr. Irwin remained at MVH for the next six months on account of the injuries he sustained when Defendant Davis tackled him from behind and slammed his head into the ground. Irwin was in a comatose state with significant TBI.

54. On May 6, 2023, Mr. Irwin was discharged from MVH and transferred to an

extended care facility for further care and management.

55. As a result of the Defendants' actions, including the failure to provide adequate medical care and the abuse and excessive force inflicted by Defendants' police officer and/or security guard, Mr. Irwin suffered and continues to suffer significant and serious injuries and damages, including permanent residual brain injury with life altering and debilitating cognitive impairment, optic neuropathy causing loss of and/or significantly diminished vision in the right eye, and other related impairments and deficits.

**FIRST CLAIM FOR RELIEF**
**(42 U.S.C. § 1983 Against Defendant Davis for Excessive Force in Violation of the Fourth and/or Fourteenth Amendments)**

56. Plaintiff repeats and realleges each and every allegation set forth in each and every preceding paragraph as if fully rewritten herein.

57. At the aforementioned time and place, Defendant MVH campus police officer Trent Davis used unnecessary, unreasonable, outrageous, and excessive force on Thomas Irwin in violation of Mr. Irwin's clearly established rights guaranteed by the Fourth and/or Fourteenth Amendments to the United States Constitution.

58. Defendant Davis' use of unnecessary, unreasonable, outrageous, and excessive force, at the aforementioned time and place, constitutes wanton, willful, reckless, unjustifiable, and malicious conduct warranting the imposition of exemplary punitive damages.

59. Faced with the circumstances present at the aforementioned time and place, a reasonable police officer would or should have known that the use of force at issue violated Irwin's clearly established Fourth and/or Fourteenth Amendment rights to be free from unreasonable searches and seizures and to be free from the type of force used against him.

60. Defendant Davis callously and recklessly disregarded Irwin's clearly established

Fourth and/or Fourteenth Amendment rights.

61. As a direct and proximate result of Defendant Davis' use of force, in violation of Thomas Irwin's clearly established Fourth and/or Fourteenth Amendment rights, Irwin endured and suffered extreme conscious physical, mental, and emotional pain and suffering, pecuniary loss, medical bills, and other economic and non economic damages to be more fully adjudicated at the trial of this matter.

Wherefore, Plaintiff Elaine Smith prays for judgment against Defendant Travis Davis for:

   a. Compensatory damages in an amount that will fully and fairly compensate Thomas Irwin for the injuries, damages, and losses suffered by Irwin;

   b. Punitive damages in an amount that will serve to adequately punish and deter Defendant Davis' acts and omissions alleged herein;

   c. Costs of suit and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

   d. All such other relief to which Plaintiff is entitled and/or this Court deems equitable.

## SECOND CLAIM FOR RELIEF
**(Assault and Battery Against Defendants Davis, MVH, and PHP)**

62. Plaintiff repeats and realleges each and every allegation set forth in each and every preceding paragraph as if fully rewritten herein.

63. On December 7, 2022, Defendant hospital campus police officer and/or security guard Defendant Davis intentionally and without permission or privilege, physically threatened and injured Thomas Irwin on the premises of MVH.

64. At all times relevant, Defendant Davis was acting within the course, scope, and in furtherance of his employment with Defendants MVH and PHP, rendering Defendants MVH and PHP vicariously liable for Defendant Davis' conduct alleged herein in this Claim for Relief.

65. Defendant Davis assaulted and battered Thomas Irwin with malicious purpose

12

and/or in a reckless or wanton matter.

66. Defendant Davis attempted and threatened to inflict injury upon Mr. Irwin.

67. Defendant Davis had the apparent ability to inflict harm upon Mr. Irwin.

68. Defendant Davis created a reasonable apprehension or fear on behalf of Mr. Irwin that he would be physically injured by Defendant Davis.

69. Defendant Davis intended to and did cause a harmful and offensive touching to Mr. Irwin's person without any privilege to do so, as described herein above, which proximately caused Mr. Irwin serious and catastrophic physical and emotional injuries and damages.

70. As a direct and proximate result of being assaulted and battered by Defendant Davis on December 7, 2022, Thomas Irwin endured and suffered extreme physical, mental, and emotional pain and suffering.

WHEREFORE, Plaintiff prays for judgment against Defendants Trent Davis, MVH, and PHP, jointly and severally, for:

  a. Compensatory damages in an amount that will fully and fairly compensate Thomas Irwin for the injuries, damages, and losses suffered by Irwin;

  b. Punitive damages in an amount that will serve to adequately punish and deter the acts and omissions alleged therein;

  c. Costs of suit and reasonable attorneys' fees; and

  d. All such other relief to which Plaintiff is entitled and/or this Court deems equitable.

### THIRD CLAIM FOR RELIEF
**(Negligence Against Defendants Davis, MVH, and PHP)**

71. Plaintiff repeats and realleges each and every allegation set forth in each and every preceding paragraph as if fully rewritten herein.

72. At the aforementioned time and place, Defendant security guard Davis acted

negligently through the following acts and omissions, among others:

    a.    Physically apprehending the unthreatening Irwin when there was no justification therefor;

    b.    Physically tackling Irwin from behind, in a bear hug, knowing this would cause a defenseless Mr. Irwin to fall face first against the ground below;

    c.    Failing to follow the MVH / PHP rules, policies, and regulations that applied to him at the aforementioned time and place, including the policy prohibiting a security guard from employing physical force against a non-threatening patient;

    d.    Failing to follow and abide by generally accepted security service industry practices;

    e.    Approaching Mr. Irwin aggressively;

    f.    Failing to deescalate;

    g.    Failing to use techniques short of physical force;

    h.    Tackling and assaulting Mr. Irwin;

    i.    Denying Mr. Irwin's request, as a patient, to relieve himself and use the restroom;

    j.    Failing to let Mr. Irwin walk away from and depart the hospital premises which is what Defendants instructed Plaintiff to do; and

    k.    Removing Mr. Irwin from the hospital before he had received necessary medical care.

73.    At all times relevant to this Claim for Relief, Defendant Davis was acting within the course, scope and in furtherance of his employment with Defendants MVH, and PHP rendering Defendant MVH and PHP vicariously liable for Defendant Davis' conduct as alleged herein in this Claim for Relief.

74.    As a direct and proximate result of Defendant Davis' negligent acts and omissions as alleged herein, Thomas Irwin suffered extreme physical, mental, and emotional pain and suffering.

Wherefore, Plaintiff prays for judgment against Defendants Davis, MVH, and PHP, jointly and severally, for:

    a.    Compensatory damages in an amount that will fully and fairly compensate Thomas Irwin for the injuries, damages, and losses suffered by Irwin;

    b.    Punitive damages in an amount that will serve to adequately punish and deter the acts and omissions alleged therein;

    c.    Costs of suit and reasonable attorneys' fees; and

    d.    All such other relief to which Plaintiff is entitled and/or this Court deems equitable.

### FOURTH CLAIM FOR RELIEF
### (Intentional Infliction of Emotional Distress Against Defendants Davis, MVH, and PHP)

75. Plaintiff repeats and realleges each and every allegation set forth in each and every preceding paragraph as if fully rewritten herein.

76. At the aforementioned time and place, MVH campus police officer and/or security guard Defendant Davis either intended to cause emotional distress or knew or should have known that his actions would result in severe emotional distress to Thomas Irwin.

77. Davis' conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was utterly intolerable in a civilized society.

78. At all times relevant to this Claim for Relief, Defendant Davis was acting within the course, scope, and in furtherance of his employment with Defendants MVH and PHP, rendering Defendants MVH and PCP vicariously liable for Defendant Davis' conduct as alleged herein in this Claim for Relief.

79. As a direct and proximate result of Defendant Davis' extreme and outrageous conduct as alleged herein, Thomas Irwin endured and suffered mental injury and anguish; and the mental anguish suffered by Thomas Irwin was serious and of a nature that no reasonable person

could be expected to endure.

      Wherefore, Plaintiff prays for judgment against Defendants Davis, MVH, and PHP, jointly and severally, for:

      a.      Compensatory damages in an amount that will fully and fairly compensate Thomas Irwin for the injuries, damages, and losses suffered by Irwin;

      b.      Punitive damages in an amount that will serve to adequately punish and deter the acts and omissions alleged therein;

      c.      Costs of suit and reasonable attorneys' fees; and

      d.      All such other relief to which Plaintiff is entitled and/or this Court deems equitable.

## FIFTH CLAIM FOR RELIEF
### (Medical Negligence Against Defendants MVH, PHP, MVES, Chapman, Chu, Bickford, Inhofer, and Snyder)

      80.      Plaintiff repeats and realleges each and every allegation set forth in each and every preceding paragraph as if fully rewritten herein

      81.      At all times relevant, the individual emergency medicine healthcare providers, Defendants Chapman, Chu, Bickford, Inhofer, and Snyder, were the apparent, implied, and/or express agents and/or employees of Defendants MVH, PHP, and/or MVES who were acting within the scope and course of his / her / their agency and/or employment with Defendants MVH, PHP, and/or MVES when the acts of medical malpractice / professional negligence, as more fully described herein, were committed, thereby imposing vicarious liability upon Defendants MVH, PHP, and/or MVES by reason of the doctrine of *respondent superior*.

      82.      At all times relevant, Defendants MVH, PHP, MVES, and their employee / agent physicians and nurses from its Emergency Medicine Service responsible for Irwin's care during the time alleged herein, including individual Defendants Chapman, Chu, Bickford, Inhofer, and Snyder, were engaged in the practice of medicine and nursing and held himself / herself / itself /

themselves out to the public in general, and to Plaintiff in particular, as skilled and competent medical doctors, physicians, nurses, and healthcare providers capable of properly and skillfully treating, caring for, and providing medical services to the public in general, and to Irwin in particular.

83. At all times relevant, Defendants MVH, PHP, MVES, and its employee / agent physicians and nurses from its Emergency Medicine Service responsible for Irwin's care during the time alleged herein, including individual Defendants Chapman, Chu, Bickford, Inhofer, and Snyder, breached his / her / their / its respective duties and obligations to Mr. Irwin by acting below the acceptable applicable standard(s) of medical or nursing practice, and were negligent, reckless and/or acted with conscious disregard for Mr. Irwin's safety, health and well-being, in the following particulars, which include, but are not limited to:

   i. Failing to perform a proper neurological exam prior to Mr. Irwin leaving/being forced out of the hospital;

   ii. Letting / allowing Mr. Irwin to leave or otherwise be forced from the hospital when he was not clinically stable to leave the hospital and/or for discharge;

   iii. Letting / allowing Mr. Irwin to leave or otherwise be forced from the hospital before his treatment was completed;

   iv. Letting / allowing patient to leave or otherwise be forced from the hospital before Mr. Irwin retuned to his cognitive baseline;

   v. Failing to safeguard Mr. Irwin's personal safety by letting / allowing Mr. Irwin to leave or otherwise be forced from the hospital when he was still impaired and/or not clinically stable to leave the hospital and/or to be discharged from the hospital;

   vi. If Mr. Irwin was in fact "discharged" by the above Defendants, then improperly discharging Irwin from the hospital when Mr. Irwin was not clinically stable for discharge, had not returned to his cognitive baseline, and/or was not neurologically intact and/or suited for discharge.

84. As a direct and proximate result of the negligent acts and omissions and breaches

of the standard of care as alleged herein by the Defendants named in this Claim for Relief, Thomas Irwin suffered permanent injury, extreme physical, mental, and emotional pain and suffering, medical bills and other economic damages, past and future.

Wherefore, Plaintiff prays for judgment against the Defendants identified in this Claim for Relief, jointly and severally, for:

    a.    Compensatory damages in an amount that will fully and fairly compensate Thomas Irwin for the injuries, damages, and losses suffered by Irwin;

    b.    Punitive damages in an amount that will serve to adequately punish and deter the acts and omissions alleged therein;

    c.    Costs of suit and reasonable attorneys' fees; and

    d.    All such other relief to which Plaintiff is entitled and/or this Court deems equitable.

## SIXTH CLAIM FOR RELIEF
### (Negligent/Reckless Hiring, Retention and/or Supervision Against Defendants MVH and PHP)

85. Plaintiff repeats and realleges each and every allegation set forth in each and every preceding paragraph as if fully rewritten herein.

86. At all times relevant to this Claim for Relief, Defendant Davis was employed by Defendants MVH and PHP to work as a hospital campus police officer and/or security guard at MVH.

87. Upon information and belief, prior to December 7, 2022, Defendant Davis had a history of violence, violent and threatening behavior, and/or excessive force, that rendered him unfit and unqualified to provide hospital police or security-related services or serve as a hospital police officer or security guard at MVH, about which Defendants MVH and/or PHP knew or should have known.

88. At all times relevant to this Claim for Relief, including specifically as of December 7, 2022, upon information and belief, Defendant Davis was incompetent to perform hospital police officer or security guard-related services or to serve as an officer security guard at MVH.

89. Despite knowledge of the above, Defendants MVH and/or PHP hired, retained, and continue to hire and retain Defendant Davis to work as a hospital police officer or security guard at MVH, including on December 7, 2022.

90. At all times relevant to this Claim for Relief, including specifically as of December 7, 2022, upon information and belief, Defendants MVH and/or PHP had actual or constructive knowledge of Defendant Davis's incompetence and knew or should have known that Davis was incompetent to provide hospital officer or security guard-related services and serve as a police officer or security guard at MVH.

91. Defendant Davis' incompetence to serve as a police officer or security guard at MVH directly and proximately caused Mr. Irwin's injuries and damages as described herein.

92. Defendant Davis's acts and/or omissions as described herein were a direct and proximate cause of Thomas Irwin's injuries and damages.

93. Defendants MVH and/or PHP were negligent and reckless/malicious in hiring, retaining, monitoring, and supervising, and/or failing to monitor or supervise Defendant Davis, including specifically on December 7, 2022.

94. As a direct and proximate result of Defendants MVH and/or PHP's negligence and reckless/malicious acts and omissions as described herein in this Claim for Relief, Thomas Irwin suffered and endured injury, physical, mental and emotional pain and suffering, medical bills and other economic damages that will continue into the future permanently.

Wherefore, Plaintiff prays for judgment against Defendants MVH and PHP, jointly and severally, for:

a. Compensatory damages in an amount that will fully and fairly compensate Thomas Irwin for the injuries, damages, and losses suffered by Irwin;

b. Punitive damages in an amount that will serve to adequately punish and deter the acts and omissions alleged therein;

c. Costs of suit and reasonable attorneys' fees; and

d. All such other relief to which Plaintiff is entitled and/or this Court deems equitable.

*TRIAL BY JURY ON ALL CLAIMS FOR RELIEF HEREBY DEMANDED.*

DATED this 7th day of December, 2023.

*/s/ Nicholas A. DiCello*
NICHOLAS A. DICELLO (0075745)
**SPANGENBERG SHIBLEY & LIBER LLP**
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
(216) 696-3232
(216) 696-3924 (FAX)
*ndicello@spanglaw.com*

James J. Harrington, IV (Michigan Bar No. P80189)
*(Motion for Admission Pro Hac Vice forthcoming)*
Todd J. Weglarz (Michigan Bar No. P48035)
*(Motion for Admission Pro Hac Vice forthcoming)*
Fieger, Fieger, Kenney & Harrington, PC
19390 West 10 Mile Road
Southfield, MI 48075
Telephone: 248-355-5555
Fax: 248-355-5148
*j.harrington@fiegerlaw.com*
*t.weglarz@fiegerlaw.com*

***Counsel for Plaintiff***