**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| ELAINE R. SMITH, Guardian for THOMAS K. IRWIN, | * | Civil Action No. 3:23-cv-00365 |
| | * | Judge Michael J. Newman |
| Plaintiff, | | Magistrate Judge Peter B. Silvain, Jr. |
| | * | |
| vs. | * | **DEFENDANTS' MOTION FOR** |
| | | **PARTIAL SUMMARY JUDGMENT** |
| MIAMI VALLEY HOSPITAL, *et al.*, | * | **ON PLAINTIFF'S FIRST, SECOND,** |
| | | **THIRD, FOURTH, AND SIXTH** |
| Defendants. | * | **CLAIMS FOR RELIEF, AND MOTION** |
| | | **TO DISMISS FOR LACK OF SUBJECT** |
| | * | **MATTER JURISDICTION** |

_____

Now come the Defendants, Miami Valley Hospital, Premier Health Partners, and Trent Davis, by and through counsel, and hereby move this Court for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. There is no genuine dispute as to any material fact: Officer Trent Davis is entitled to qualified immunity on all of Plaintiff Elaine Smith's claims against him.

As a result, Defendants Miami Valley Hospital and Premier Health Partners are also entitled to summary judgment. There is no genuine dispute as to any material fact: with Officer Davis' liability extinguished through qualified immunity, there is no secondary liability to impute to them. And as the affidavits and demonstrate show, there is simply no history of any misconduct, let alone anything that could qualify as criminal or tortious. Plaintiff's claim for negligent hiring, retention, and/or supervision thus fails as a matter of law.

Finally, this Court should decline to exercise jurisdiction in the absence of a federal claim and dismiss any remaining claim for lack of subject matter jurisdiction.

This Motion is supported by the accompanying Memorandum.

Respectfully submitted,

 /s/ Amber R. Mullaly
John F. Haviland, Trial Attorney
Atty. Reg. No: 0029599
Amber R. Mullaly
Atty. Reg. No: 0096042
Jaren A. Hardesty
Atty. Reg. No: 0102200
BIESER, GREER & LANDIS, LLP
6 North Main Street, Suite 400
Dayton, OH 45402
Office Tel: (937) 223-3277
E-mail: jfh@biesergreer.com;
arm@biesergreer.com; jah@biesergreer.com
Fax: (937) 223-6339
*Counsel for Miami Valley Hospital, Premier Health*
*Partners, Trent Davis, and Megan M. Snyder, R.N.*

4886-8046-3573, v. 1

TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................... 1

II.   STATEMENT OF FACTS................................................................................ 2

III.  LEGAL STANDARDS.................................................................................... 4

   A.  Motion for Summary Judgment Standard........................................................ 4

   B.  Motion to Dismiss for Lack of Subject Matter Jurisdiction ................................. 4

IV.  OFFICER DAVIS, MVH, AND PHP ARE ENTITLED TO PARTIAL SUMMARY
JUDGMENT ON SMITH'S CLAIMS FOR VIOLATIONS OF 42 U.S.C. § 1983,
ASSAULT/BATTERY, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS,
NEGLIGENCE, AND NEGLIGENT/RECKLESS HIRING, RETENTION, AND/OR
SUPERVISION ................................................................................................... 5

   A.  Officer Davis is entitled to summary judgment because he has qualified immunity for all
of Ms. Smith's claims against him. ........................................................................ 5

     1.  Officer Davis did not violate Mr. Irwin's constitutional rights. ..................................... 6

     2.  Even if the force utilized constituted excessive force, the right was not clearly
established. ........................................................................................................ 8

     3.  Based on the foregoing, Officer Davis is also entitled to qualified immunity on all of
Ms. Smith's state law tort claims........................................................................... 9

   B.  MVH and PHP are entitled to summary judgment on all of Ms. Smith's claims against
them for vicarious liability for the acts of Officer Davis. ..........................................11

1. Because Officer Davis has qualified immunity, there is no secondary liability that could flow to MVH or PHP. ...............................................................................................11

2. In the alternative, MVH and PHP are entitled to summary judgment because they are not liable for the allegedly intentional and malevolent acts of an agent. ............................ 12

C. Because there are no genuine disputes of any material fact, MVH and PHP are entitled to summary judgment on Ms. Smith's claim for negligent/reckless hiring, retention, and/or supervision. ...................................................................................................................... 13

V. AS TO THE REMAINING CLAIMS, THIS COURT SHOULD DECLINE TO MAINTAIN JURISDICTION IN THE ABSENCE OF A FEDERAL CLAIM AND DISMISS ANY REMAINING CLAIM FOR LACK OF SUBJECT MATTER JURISDICTION .............. 14

VI. CONCLUSION ............................................................................................................ 15

## MEMORANDUM IN SUPPORT

### I.  INTRODUCTION

Officer Trent Davis ("Officer Davis") is entitled to qualified immunity on all of Elaine Smith's ("Ms. Smith") claims against him.  It has long been held that police officers have qualified immunity from excessive force claims brought pursuant to 42 U.S.C. § 1983.[1]  Because the other claims against Officer Davis are factually identical to the § 1983 claim, he is also entitled to summary judgment as a matter of law on those claims.

Likewise, because Officer Davis is entitled to qualified immunity, Ms. Smith's claims against Miami Valley Hospital ("MVH") and Premier Health Partners ("PHP") for vicarious liability for Officer Davis' acts must fail as a matter of law.  There is no agent that could impute any liability onto them.

Officer Davis has no "history of violence, violent and threatening behavior, and/or excessive force," despite Ms. Smith's baseless allegations to the contrary.  *See* Doc. 1, *Compl.*, ¶ 87.  Because there is no basis in fact for these allegations, MVH and PHP are also entitled to summary judgment on Ms. Smith's negligent/reckless hiring and retention claim.

The Court should furthermore decline to exercise supplemental jurisdiction over any of Ms. Smith's remaining claims, such as medical negligence, and dismiss them for want of subject matter jurisdiction.

---

[1] It is anticipated that Ms. Smith may argue that Officer Davis was employed by a private employer (MVH), and not the State of Ohio.  While this is true, Officer Davis is a commissioned police officer under the laws of the State of Ohio and was during his tenure with MVH.  Furthermore, were Ms. Smith to argue qualified immunity does not apply to Officer Davis because he is employed by MVH and not by the State of Ohio directly, that would undercut her § 1983 claim entirely.  In order for § 1983 liability to even possibly attach, and for this Court to even potentially have subject matter jurisdiction, Officer Davis must be treated as a state actor.  As a result, he is entitled to qualified immunity.

## II.  STATEMENT OF FACTS

On December 7, 2022, Thomas Irwin ("Mr. Irwin") was a patient at MVH.  *See* Doc. 1, *Compl.*, ¶¶ 22-23.  University of Dayton police found Mr. Irwin sleeping on the ground near a bus stop on the University's campus around 5:03 a.m. on December 7, 2022.  *Id.*, ¶ 20.  At that time, officers noted that he had slurred speech and was staggering.  *Id.*, ¶ 21.  At 5:30 a.m., Mr. Irwin was taken to MVH's emergency department to be assessed for drug and/or alcohol intoxication. *Id.*, ¶ 22.

Mr. Irwin was unable to answer the emergency department questions.  *Id.*, ¶ 24.  He appeared to be either intoxicated and/or under the influence of drugs.  *Id.*  A CT of his brain was taken, revealing no trauma or any other abnormalities of the brain.  *Id.*, ¶ 31.  Shortly after he awoke at around 3:35 p.m., MVH staff escorted Mr. Irwin out of the emergency department. *Id.*, ¶ 37.

It was the goal of both Mr. Irwin and MVH staff for Mr. Irwin to leave MVH.  *See* Doc. 30, **Exhibit A**, *Affidavit of Officer Trent Davis*, ¶ 18.  Mr. Irwin was not pursued when he left the MVH building.  *Id.*  As Mr. Irwin himself admits, he walked outside of MVH and publicly urinated. *Compl.*, ¶ 43.  However, Mr. Irwin never asked to use the restroom before leaving.  *Affidavit of Officer Davis*, ¶ 18.  Further, Mr. Irwin voluntarily left the MVH building, and was given clothing, a jacket, and shoes which he did not have upon arrival to the hospital, contrary to the assertions by Ms. Smith.  *Compl.*, ¶ 43; *Affidavit of Officer Davis*, ¶¶ 19-20.

After initially walking away from the MVH building, Mr. Irwin reapproached the sidewalk in front of MVH, while he removed his penis from his pants. *Affidavit of Officer Davis*, ¶¶ 21-22. His genitals were visible to those inside the building, including children.  *Id.*, ¶¶ 22-23.  Mr. Irwin then urinated in front of those individuals. *Id.*, ¶ 23.  Officer Davis then ran to where Mr. Irwin

was walking near the MVH building to place Mr. Irwin under arrest for public indecency. *Id.*, ¶ 26. He instructed Mr. Irwin to "stop" and that he was being placed "under arrest." *Id.*, ¶ 27. Mr. Irwin proceeded to run away from Officer Davis toward Main Street. *Id.*, ¶ 28.

Officer Davis pursued Mr. Irwin and continued to verbally announce that Mr. Irwin was under arrest. *Id.*, ¶¶ 27, 29. Officer Davis finally caught up to Mr. Irwin, and he reached out to Mr. Irwin to prevent Mr. Irwin from continuing to flee the arrest and to prevent the pursuit from continuing into Main Street traffic. *Id.*, ¶ 30. At all times during his interaction with Mr. Irwin, Officer Davis had on his department-issued uniform of the day, clearly identifying Officer Davis as a police officer. *Id.*, ¶ 36. All of Officer Davis' actions were justified and reasonable. *Id.*, ¶ 37.

When Officer Davis reached the fleeing Mr. Irwin to effectuate his arrest, Mr. Irwin's face struck the ground. *Compl.*, ¶ 47. Mr. Irwin experienced a serious head injury. *Compl.*, ¶ 49. Officer Davis, along with other MVH officers and personnel, immediately attended to Mr. Irwin's medical care. *Affidavit of Officer Davis*, ¶ 33.

Because of these allegations of excessive force, Ms. Smith as guardian for Mr. Irwin filed claims against MVH, PHP, Officer Davis, Nurse Megan Snyder, Miami Valley Emergency Specialists, LLC, Dr. Steven Chapman, Dr. Titus Chu, Dr. Trevor Bickford, and Dr. Joseph W. Inhofer[2] for claims of excessive force in violation of § 1983, assault and battery, negligence, intentional infliction of emotional distress, medical negligence, negligent/reckless hiring, retention, and/or supervision.

---

[2] The claims against Drs. Bickford and Inhofer are no longer pending. *See* Doc. 22 & 27. Drs. Bickford and Inhofer were acting within the course and scope of their employment with the Department of Air Force, and pursuant to the Federal Tort Claims Act, the United States of America was substituted as a party defendant. The claims against the United States government were subsequently dismissed. *See* Doc. 27.

### III.  LEGAL STANDARDS

#### A.  Motion for Summary Judgment Standard

This Court should properly grant summary judgment when the "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has carried this burden, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The nonmoving party must set forth "specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quoting Fed. R. Civ. P. 56(c)(2)).

If the non-movant's evidence is "merely colorable" or is "not significantly probative," the court may grant summary judgement.  *Id*. at 248-49.  "[T]he mere existence of **some** alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no **genuine** issue of **material** fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (emphasis in original).  Where one party's version of the facts is "blatantly contradicted by the record," this Court "should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id*.

#### B.  Motion to Dismiss for Lack of Subject Matter Jurisdiction

"If the [C]ourt determines at any time that it lacks subject-matter jurisdiction, the [C]ourt must dismiss the action." Fed. R. Civ. P. 12(h)(3).  It is well-established that the presumption is that federal courts lack jurisdiction over a matter. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511

U.S. 375, 377 (1994). The burden is on the plaintiff to demonstrate to this Court that it has jurisdiction. *Id*.

In reviewing a Rule 12(b)(1) motion, the Court ignores "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 387 (6th Cir.2016). If there are federal claims remaining, then this Court properly exercises subject matter jurisdiction. *See id*.

IV. **OFFICER DAVIS, MVH, AND PHP ARE ENTITLED TO PARTIAL SUMMARY JUDGMENT ON SMITH'S CLAIMS FOR VIOLATIONS OF 42 U.S.C. § 1983, ASSAULT/BATTERY, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, NEGLIGENCE, AND NEGLIGENT/RECKLESS HIRING, RETENTION, AND/OR SUPERVISION**

   A. **Officer Davis is entitled to summary judgment because he has qualified immunity for all of Ms. Smith's claims against him.**

Qualified immunity provides police officers with a "shield[] from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).[3] For a right to be considered clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The "unlawfulness must be apparent." *Id*.

The burden is on Ms. Smith to identify either "controlling authority" or "a robust consensus of cases of persuasive authority" that placed the statutory or constitutional question beyond debate at the time of the alleged violation. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741-42 (2011). "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *Id*. at 741.

---

[3] Qualified immunity is important, because otherwise there is a "danger that fear of being sued will 'damper the ardor of all but the most resolute . . .'" *Id*. at 814 (quoting *Gregoire* v. *Biddle*, 177 F.2d 579, 581 (2nd Cir. 1949), cert. denied, 339 U.S. 949 (1950)).

Properly applied, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Id.* at 743 *(*quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "Qualified immunity applies irrespective of whether the official's error was a mistake of law or a mistake of fact, or a mistake based on mixed questions of law and fact." *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir.2015) (citation omitted).

When a defendant raises qualified immunity, the plaintiff must demonstrate that (1) Officer Davis violated a constitutional right; and (2) the right was "clearly established" when the alleged violation occurred. *Lemmon v. City of Akron*, 768 F.App'x 410, 414 (6th Cir.2019). The burden is on Ms. Smith to demonstrate that qualified immunity is inappropriate.

    1.   Officer Davis did not violate Mr. Irwin's constitutional rights.

The force Mr. Irwin required Officer Davis to use did not constitute excessive force. The Sixth Circuit evaluates an officer's use of force under an "objective reasonableness standard." *Lemmon v. City of Akron*, 768 F.App'x 410, 414 (6th Cir. 2019) (citing *Simmonds v. Genesee Cty.*, 682 F.3d 438, 444 (6th Cir. 2012)). This Court is to look at "whether the officers' actions were objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* Reasonableness is determined at the moment the officer uses force, "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

Part of the inquiry requires a "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Pennington v. Terry*, 644 F.App'x 533, 541 (6th Cir. 2016) (quoting *Graham*, 490 U.S. at 396). The Supreme Court has elucidated three factors that are relevant: (1) the severity of the

crime at issue; (2) whether the suspect posed an immediate threat of safety; and (3) whether the suspect was actively resisting arrest or attempting to flee. *Id*.

Fleeing from an officer justifies the use of force. *Brown v. Giles*, 95 F.4th 436, 438 (6th Cir. 2024). In *Brown*, much like here, the plaintiff was dealing with addiction and homelessness. *Id*. That plaintiff showed up at his mother's home asking for assistance, and she called the police, knowing he had a warrant out for his arrest. *Id*. The defendant-officer responded to the call, and he told the plaintiff to stay put while he made a call. *Id*. at 439. The plaintiff immediately fled. *Id*. The defendant-officer pursued him, and in mid-stride, fired his taser. *Id*. One probe hit the plaintiff's head; the other probe hit his back. *Id*. The Sixth Circuit held that qualified immunity was appropriate, because it was not excessive force. *See id*. at 441.

Tackling a putative criminal suspect is "objectively reasonable." *Vanpelt v. City of Detroit*, 70 F.4th 338, 340 (6th Cir. 2023). This is especially true when the suspect flees. *Id*. In that instance, "police may use force to subdue him." *Id*. And courts are not to look for "'less intrusive' means" that a police officer could have used, because officers are forced to make split-second decisions. *Id*. (quoting *Illinois v. Lafayette*, 462 U.S. 640, 647 (1983)).

Taking down Mr. Irwin was objectively reasonable. When Mr. Irwin left MVH, no one followed him. *Affidavit of Officer Davis*, ¶ 20. The MVH staff were happy to see him leave. *Id*. However, Mr. Irwin committed a crime when he removed his penis from his pants and began urinating outside the building, in the clear view of MVH patients and hospital guests. *Id*., ¶¶ 22-24. Officer Davis was instructed to place him under arrest for public indecency. *Id*., ¶ 26. Officer Davis verbally instructed Mr. Irwin to "stop" and that he was "under arrest." *Id*., ¶ 27.

When Mr. Irwin began to run away, *id*., ¶ 28, the situation escalated. *See Pennington*, 644 F.App'x at 541. At that point, not only was Mr. Irwin to be charged with public indecency, but he

7

was also fleeing from a police officer, thereby committing an additional criminal offense. *Affidavit of Officer Davis*, ¶ 24, 35. That further supports the fact that Officer Davis was acting reasonably; he was trying to prevent Mr. Irwin from escaping into Main Street traffic and causing a larger, unsafe, and more problematic scene. *Id.*, ¶¶ 30-31. To prevent further fleeing, Officer Davis reasonably sought to detain Mr. Irwin. *Id.*

Qualified immunity is purely a legal determination. *Bell-Bey v. Williams*, 87 F.3d 832, 836 (6th Cir. 1996). Officer Davis acted reasonably in trying to apprehend Mr. Irwin when he began to publicly urinate in plain view of the hospital patients and visitors. He acted reasonably at that moment. This Court cannot look at the matter, with "20/20 vision of hindsight," *Lemmon*, 768 F.App'x at 414, and find Officer Davis' actions to be unreasonable simply because Mr. Irwin ended up hitting his head when he fell to the ground.

As such, Officer Davis acted reasonably and is entitled to qualified immunity.

2. Even if the force utilized constituted excessive force, the right was not clearly established.

These Defendants do not concede that Officer Davis' actions of December 7, 2022 even remotely constitute excessive force, but for purposes of argument, even if this Court finds that Officer Davis tackling Mr. Irwin constituted excessive force, the purported right to be free from excessive force in taking down a suspect who is publicly urinating and fleeing from the scene was not clearly established by either the Supreme Court or the Sixth Circuit Court of Appeals. On a motion for summary judgment, the Court must focus on facts that are "knowable to the defendant officers" at the time of the action in question. *White v. Pauly*, 580 U.S. 73, 77 (2017) (per curiam).

The Eighth Circuit Court of Appeals held, in facts similar to this case, that executing a takedown of a noncompliant individual does not constitute violating a clearly established right. *Kelsay v. Ernst*, 933 F.3d 975, 980 (8th Cir. 2019). There, the plaintiff sued and alleged excessive

force under § 1983 where the plaintiff's husband was arrested, and the plaintiff interfered with the arrest.  *Id*. at 978.  The defendant-officer noticed that the plaintiff was walking toward the pool where her daughter was, and he instructed her to "get back here."  *Id*.  He did not, however, announce that she was under arrest.  The defendant-officer then placed the plaintiff in a bear hug, threw her to the ground, and handcuffed her.  *Id*.  She lost consciousness when she hit the ground and began screaming about the pain in her shoulder.  *Id*.  In this case, Officer Davis clearly informed Mr. Irwin that he was under arrest.  Mr. Irwin continued to ignore him and urinate publicly, while heading toward Main Street.  In fact, he began to run from Officer Davis after seeing Officer Davis pursuing him toward Main Street.  At the time this incident occurred, there was (and is) no clearly established right that Officer Davis violated.[4]

It is not entirely clear, at any rate, what right Ms. Smith thinks that Officer Davis violated. Was it his right to urinate in public and flee from a police officer when ordered to stop and that he was under arrest?  Defendants doubt that this Court is going to be the first court to recognize a constitutional right under the Fourth and/or Fourteenth Amendment to do such a thing.

> 3. Based on the foregoing, Officer Davis is also entitled to qualified immunity on all of Ms. Smith's state law tort claims.

The basic facts of Ms. Smith's state law tort claims against Officer Davis are also properly subject to summary judgment.  The underlying facts are identical; thus, Officer Davis should also be entitled to qualified immunity on Ms. Smith's claims of assault/battery, negligence, and intentional infliction of emotional distress.

---

[4] Even if this Court were to find Officer Davis' force to be objectively unreasonable (the Court should not), the unreasonableness was not clearly established in 2022 when this event occurred. Thus, Officer Davis is still entitled to qualified immunity.  *See Latits v. Phillips*, 878 F.3d 541, 553 (6th Cir. 2017).

Officer Davis was attempting to effectuate a lawful arrest.  In order to be liable for assault or battery, Officer Davis would have had to intended to injure Mr. Irwin.[5]  But Officer Davis' only intent was to arrest Mr. Irwin, as his supervisor instructed.  *See Affidavit of Officer Davis*, ¶¶ 26, 34.  Because this claim is entirely duplicative and should be subsumed into her § 1983 claim, the Court should hold Officer Davis has qualified immunity for the assault/battery claim, too.

The negligence claim is just as baffling.  One of Officer Davis' alleged negligent acts was that he "[p]hysically apprehend[ed]" Mr. Irwin.  Doc. 1, PageID #14.  In a lawful arrest, the suspect would always be physically apprehended, one way or another.  And that makes sense, given that police officers have a privilege to use appropriate force to effectuate an arrest. *State v. Latessa*, 2007-Ohio-3373, ¶ 25 (Ohio Ct. App.) ("In upholding the law, an officer is privileged to use an objectively reasonable amount of force to effectuate the arrest of a suspect.") (quoting *Graham,* 490 U.S. at 397).  Like the intentional tort claims, the negligence claim is just another way of dressing up the allegations that Officer Davis should have immunity against.  Mr. Irwin was not "walk[ing] away from and depart[ing] the hospital premises" like he was "instructed" to do.  Doc. 1, PageID #14.  Instead, he was urinating in front of hospital patients and guests.  *Affidavit of Officer Davis*, ¶¶ 22-23.  He was also being non-compliant, fleeing, and heading toward pedestrians and traffic.  *See id.*, ¶¶ 28-31.  Because Officer Davis has immunity for his actions relating to Mr. Irwin, this claim is properly disposed of on summary judgment.

The intentional infliction of emotional distress claim fares no better.  Officer Davis' conduct was not "outrageous."  Doc. 1, PageID # 15.  He was conducting a lawful arrest.  It was

---

[5] Officers also have a privilege to commit battery when effecting a lawful arrest.  *E.g.*, *McKee v. McCann*, 95 N.E.3d 1079, ¶ 16 (Ohio Ct. App.).  That privilege could be defeated if there was excessive force, but as set forth in the video and Officer Davis' affidavit, there was no excessive force.  Officer Davis was only trying to effectuate a lawful arrest on a fleeing suspect.

Mr. Irwin who acted outrageously by pulling out his penis and urinating in front of hospital patients and guests.  Officer Davis was the one trying to bring control to this situation.  This claim should be subsumed into Ms. Smith's § 1983 claim, and as such, Officer Davis is entitled to qualified immunity.

Were the Court to hold otherwise, it would create a chilling effect on police officers.  The police officer would reasonably be afraid and may be less likely to effectuate a lawful arrest with a fleeing, criminal suspect if he or she were to know that there would only be immunity for a § 1983 claim, but it would not apply to state law tort claims.  In fact, it would defeat the purpose of the entire doctrine of qualified immunity.

### B. MVH and PHP are entitled to summary judgment on all of Ms. Smith's claims against them for vicarious liability for the acts of Officer Davis.

1. Because Officer Davis has qualified immunity, there is no secondary liability that could flow to MVH or PHP.

Given that Officer Davis is entitled to qualified immunity on all of Ms. Smith's state law tort claims, MVH and PHP are entitled to summary judgment.  It is axiomatic that "vicarious liability flows through the agent and to the principal; no liability of a principal can be found without direct liability of the agent." *Walker v. Albers Ins. Agency*, 134 N.E.3d 896, ¶ 26 (Ohio Ct. App.).  Likewise, the Ohio Supreme Court has held that where a primary tortfeasor's liability is extinguished, there is no secondary liability that could possibly flow through to the principal.  *See Comer v. Risko*, 106 Ohio St.3d 185 (2005).

Here, Officer Davis should receive qualified immunity for the § 1983 claim as well as the derivative and duplicative claims for assault/battery, negligence, and intentional infliction of emotional distress.  The claims are all predicated on the same single underlying act.  Because he is immune, there is no liability that could flow to MVH and PHP.  As such, they are also entitled to summary judgment.

> **2.** <u>In the alternative, MVH and PHP are entitled to summary judgment because they are not liable for the allegedly intentional and malevolent acts of an agent.</u>

MVH and PHP cannot be liable for the alleged intentional torts of their alleged agents. *See Vrabel v. Acri*, 156 Ohio St. 467, 474 (1952) ("[A]n intentional and wilful attack committed by an agent or employee, to vent his own . . . malevolence against the injured person, is a clear departure from his employment and his principal or employer is not responsible therefor."); *Williams v. Clerac, LLC*, 635 F. Supp. 3d 607, 613 (N.D.Ohio 2022) ("[I]f the employee tortfeasor acts intentionally and willfully for his own personal purposes, the employer is not responsible, even if the acts are committed while the employee is on duty."); *see also Byrd v. Faber*, 57 Ohio St.3d 56, 59 (1991) ("[T]he employer would not be liable if an employee physically assaulted a patron without provocation.").

Ms. Smith cannot have it both ways. On the one hand, she alleged that Officer Davis' actions were "willful, reckless, unjustifiable, and malicious." Doc. 1, PageID # 11; *see also id.*, PageID # 12-13. Yet on the other hand, she alleged that MVH and PHP are vicariously liable for his conduct. *Id.*, PageID # 12. Under Ohio law, the very acts that Ms. Smith described would ***preclude*** MVH and PHP from being vicariously liable for his alleged misconduct. If Officer Davis' acts were intentional and willful, then as principal, neither MVH nor PHP[6] could possibly be vicariously liable for any Officer Davis' acts. Accordingly, Ms. Smith's vicarious liability claims against MVH and PHP for assault/battery, negligence, and intentional infliction of emotional distress fail as a matter of law. MVH and PHP are entitled to summary judgment under Fed. R. Civ. P. 56.

---

[6] As stated in their Answer, PHP did not—and does not—employ Officer Davis. *See Answer*, Doc. #3, PageID # 60. As such, PHP is separately entitled to summary judgment on the ground that it is an improper party.

**C. Because there are no genuine disputes of any material fact, MVH and PHP are entitled to summary judgment on Ms. Smith's claim for negligent/reckless hiring, retention, and/or supervision.**

Contrary to Ms. Smith's baseless allegation, "upon information and belief," that Officer Davis had a history of violence and threatening behavior, none exists. Doc. 1, PageID #18. The burden is on Ms. Smith to show facts that indicate MVH and/or PHP knew, or should have known, that Officer Davis "had a past history of criminal or tortious conduct." *Stephens v. A-Able Rents Co.*, 101 Ohio App.3d 20, 26, 654 N.E.2d 1315 (Ohio Ct. App.). The important inquiry is what MVH and PHP should have known about that would have prevented them from hiring Officer Davis—either before or after he was hired. *Id*. Stated differently, courts look to foreseeability in determining whether the principal can be liable for negligent hiring and retention. *Dawson v. Airtouch Cellular*, 42 F.Supp.2d 767, 772 (S.D.Ohio 1999). It "is only where the misconduct was to be anticipated, and taking the risk of it was unreasonable, that liability will be imposed." *Id*. (citation omitted).

The irrefutable evidence shows that there is nothing that would have prevented MVH and PHP from hiring Officer Davis. *See* **Exhibits A at ¶¶ 1-12, B[7], C[8], D[9], and E[10]**. Officer Davis' entire personnel files and peace officer education, training, and experience are completely devoid of any misconduct, let alone anything "criminal or tortious." The risk that Officer Davis, or any police officer that could be employed by MVH or any other jurisdiction, may injure a fleeing suspect was certainly not unreasonable; police officers often have to use some degree of force when effectuating a lawful arrest, particularly when pursuing a suspect who fails to comply with an officer's orders and interferes with a lawful arrest.

---

[7] Doc. 31.
[8] Doc. 32.
[9] Doc. 33.
[10] Doc. 34.

There is nothing in Officer Davis' records that demonstrate any past history of violence, contrary to Plaintiff's baseless allegations.  Officer Davis' personnel files from every law enforcement agency he has ever worked at have been submitted in support of the Defendants' *Motion for Partial Summary Judgment*.  The lack of violence in Officer Davis' past is both damning to Ms. Smith's claims and unsurprising.  Officer Davis, as the footage shows, was ***not*** acting maliciously, intentionally, recklessly, or dangerously.  Instead, Officer Davis was trying to effectuate an arrest from a suspect who was publicly urinating in front of hospital patients and guests as well as defying commands from a law enforcement officer by fleeing a lawful arrest.

In *Dawson*, Chief Judge Marbley noted that a criminal or tortious propensity "is a necessary prerequisite for a negligent hiring / retention claim."  42 F.Supp.2d at 773.  In the absence of a criminal or tortious past, the court properly granted summary judgment.  *See id*.  The same result should occur here, where Officer Davis has no such past, despite the unsupported allegations of Ms. Smith to the contrary.

Because there are no genuine disputes of any material facts, MVH and PHP are entitled to summary judgment on these claims.

**V.**   **AS TO THE REMAINING CLAIMS, THIS COURT SHOULD DECLINE TO MAINTAIN JURISDICTION IN THE ABSENCE OF A FEDERAL CLAIM AND DISMISS ANY REMAINING CLAIM FOR LACK OF SUBJECT MATTER JURISDICTION**

Ms. Smith's sole ticket into Federal Court is through her § 1983 claim.  As Officer Davis is entitled to qualified immunity on all claims pending against him, including and most importantly the § 1983 claim, this Court should decline to exercise supplemental jurisdiction over any remaining tort claim (such as medical negligence) and dismiss this action for lack of subject matter jurisdiction.

"If the federal claims are dismissed before trial . . . the state claims should be dismissed as well." *Brandenburg v. Hous. Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001) (citation omitted).

The "the usual course is for the district court to dismiss the state-law claims without prejudice if all federal claims are disposed of on summary judgment." *Id*.

The Court should dismiss the medical negligence claim (and any claim this Court is not inclined to dispose of on summary judgment). In *Brandenburg*, the Sixth Circuit Court of Appeals affirmed the district court's decision to grant summary judgment on the plaintiff's First Amendment and substantive due process claim. *See* 253 F.3d at 900. Because the district court disposed of all of the plaintiff's federal claims on summary judgment, the court exercised its discretion in dismissing without prejudice the remaining state law claims. *See id*. Here, Ms. Smith's § 1983 claim is properly disposed of on summary judgment as a matter of law. Any claim that is not disposed of on summary judgment should be dismissed without prejudice, to be dealt with in the state courts of Ohio.

## VI. CONCLUSION

Therefore, the Court should grant summary judgment in favor of Officer Davis and hold that he is entitled to qualified immunity on all of Ms. Smith's claims that derive from the same set of facts: her § 1983 claim, assault/battery, negligence, and intentional infliction of emotional distress. Because the agent is immune from suit, MVH and PHP are entitled to summary judgment on Ms. Smith's claims against them for assault/battery, negligence, and intentional infliction of emotional distress.

Officer Davis has no history of violence, threatening behavior, or excessive force as alleged by Ms. Smith. His records, as submitted with this *Motion,* prove exactly the opposite. As such, MVH and PHP are entitled to summary judgment on Ms. Smith's negligent or reckless hiring/retention claim. There is no genuine dispute as to any material fact; there have been no

15

allegations of violence, as the evidence in support of this *Motion for Summary Judgment* demonstrates.

And finally, Ms. Smith's medical negligence claim (and any other claim this Court does not dispose of on summary judgment) should be dismissed without prejudice. The Court should decline to exercise supplemental jurisdiction over Ms. Smith's state law claims and dismiss them for want of subject matter jurisdiction. Ms. Smith may litigate these state law torts in the state courts in Ohio, if she wishes.

Respectfully submitted,

*/s/ Amber R. Mullaly*
John F. Haviland, Trial Attorney
Atty. Reg. No: 0029599
Amber R. Mullaly
Atty. Reg. No: 0096042
Jaren A. Hardesty
Atty. Reg. No: 0102200
BIESER, GREER & LANDIS, LLP
409 East Monument Avenue, Suite 400
Dayton, OH 45402
Office Tel: (937) 223-3277
E-mail: jfh@biesergreer.com;
arm@biesergreer.com; jah@biesergreer.com
Fax: (937) 250-7786
*Counsel for Miami Valley Hospital, Premier Health Partners, Trent Davis, and Megan M. Snyder, R.N.*

## **CERTIFICATE OF SERVICE**

I certify that on the 16th day of August 2024, a true and correct copy of the foregoing was electronically filed with the Clerk of Court's CM/ECF system, and that service on case participants shall be accomplished on the following by the CM/ECF system:

Nicholas A. DiCello, Esq.
SPANGENBERG SHIBLEY & LIBER, LLP
1001 Lakeside Ave. East, Suite 1700
Cleveland, OH 44114
ndicello@spanglaw.com

-and-

Todd J. Weglarz, Esq.
FIEGER, FIEGER, KENNEY &
HARRINGTON, P.C.
19390 W. 10 Mile Road
Southfield, MI 48075
t.weglarz@fiegerlaw.com
*Counsel for Plaintiff, Elaine R. Smith*

Joshua F. DeBra, Esq.
CALDERHEAD, LOCKMEYER & PESCHKE
6281 Tri-Ridge Blvd, Suite 210
Loveland, OH 45140
jdebra@clp-law.com
*Counsel for Defendant, Dr. Titus Chu*

Michael F. Lyon, Esq.
Paul J. Vollman, Esq.
Cullen P. Rooney, Esq.
LINDHORST & DREIDAME CO., LPA
312 Walnut Street, Suite 3100
Cincinnati, OH 45202
mlyon@lindhorstlaw.com;
pvollman@lindhorstlaw.com;
crooney@lindhorstlaw.com
*Counsel for Miami Valley Emergency Specialists, LLC, and Dr. Steven Chapman*

BIESER, GREER & LANDIS, LLP

*/s/  Amber R. Mullaly*

0460.222307/4869-0031-2536, v. 1